IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-2462-MSK-MEH

C.W., a minor, by and through his parents B.W. and C.B.,

   Plaintiff,

*v.*

DENVER COUNTY SCHOOL DISTRICT NO. 1,

   Defendant.

---

### OPINION AND ORDER ON MOTION TO DISMISS

---

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss (**# 25**), the Plaintiff's Response (**# 30**), and the Defendant's Reply (**# 34**).   For the following reasons, the Motion is denied.

## I.   JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Colorado Office of Administrative Courts under 20 U.S.C. § 1415(i)(2)(A).

## II.   BACKGROUND

For purposes of this motion, the material factual allegations can be briefly summarized.[1] Plaintiff C.W. is a minor child enrolled in the Defendant Denver County School District (the District).   He has tested as a highly gifted and talented student, but suffers from a number of disabilities, including an autism spectrum disorder, obsessive compulsive disorder, generalized

---

[1]   The Court recounts and accepts as true the well-pled facts alleged in the Amended Complaint (**# 16**).   *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

1

anxiety disorder, Ehlers-Danlos Syndrom, Tourette's disorder, an eating disorder and encopresis, and a sleep disorder entitling him to special education and related services.

In conformance with the Individuals with Disabilities Education Act (IDEA),[2] a team comprised of C.W.'s parents and District personnel assessed C.W.'s needs. Due to the severity and complexity of his disabilities, they determined that the least restrictive environment for his public education was at his home. As a consequence, his 10/24/12 Individual Educational Plan (IEP) recommended educational placement at his home.

Since the 2012-2013 academic year, the District has not provided instruction in core academic subjects (language arts, mathematics, science, history, civics and government, geography, economics, art and foreign language) nor in social sciences, technology, library and information, visual arts, theater, music, technology and physical education, or instruction appropriate to a highly gifted and talented student. The services that were provided were neither appropriate nor sufficient, and they were not delivered by providers with adequate training/experience to meet C.W.'s needs. In 2016, C.W.'s parents brought a due-process complaint against the District based on these grievances.

In 2017, over his parents' objection, the District changed C.W.'s designated placement from his home to a Residential Facility.

Upon consideration of C.W.'s parents' complaint and evidence presented at a hearing, an administrative law judge held that the District had violated the IDEA during the 2014-2015,

---

[2] It is undisputed the IDEA requires that Colorado provide a free appropriate public education (FAPE) to all eligible children. 20 U.S.C. § 1412(a)(1). A FAPE includes both special-education instruction and related services to assist in the child's benefit from instruction. 20 U.S.C. § 1401(9), (26), & (29). Such instruction and services are memorialized in the child's IEP, developed in a collaborative process involving both parents and educators. 20 U.S.C. §§ 1401(9)(D), 1414.

2015-2016, and 2016-2017 academic years, and awarded unspecified compensatory damages. But the ALJ found that the 2017 IEP was reasonably calculated to provide C.W. with a free appropriate public education (FAPE).

C.W.'s parents now bring several claims. In its first claim for relief, the Amended Complaint seeks review and reversal of the ALJ's determination pursuant to 20 U.S.C. §1415(C). Because C.W.'s parents prevailed on claims pertinent to school years 2014-2015, 2015-2016, and 2016-2017, the Court understands that this challenge is limited to the one adverse ruling made by the ALJ — that the 2017 IEP was reasonably calculated to provide C.W. with a FAPE. The second claim contends that the District's past and present actions violate § 504 of the Rehabilitation Act of 1973. The third claim contends that the District's past and present actions violate Title II of the Americans with Disabilities Act. The fourth claim contends that the District's actions (not circumscribed by time or otherwise described) violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

The District requests dismissal of the Fourth Claim for relief for failure to state a claim. (**# 25**).

### III. LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the complaint, any exhibits attached thereto, and any external documents that are incorporated by reference. *See Smith v. United States*, 561 F.3d 1090, 1098

(10th Cir. 2009). However, a court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the complaint that are merely legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. The Court then takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a "plausible" as compared to a "conceivable" claim. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## IV. DISCUSSION

The Equal Protection Clause of the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This mandate "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). To state an equal-protection claim, a plaintiff must allege that the defendant treated him or her differently from another similarly situated person. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). To be similarly situated, a person "must be *prima facie* identical in all relevant respects or directly comparable in all material respects". Although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar. *United States v. Moore*, 543 F.3d 891, 896–97 (7th Cir. 2008).

The Amended Complaint alleges that "C.W., and other students similarly situated — students with disabilities who require the provision of educational services in a home-based placement — were (and are) treated differently by the School District than the manner in which the School District treats other students." Am. Compl. ¶ 96.

The District makes two arguments in support of dismissal. First, it argues that C.W. and other students with "home based placement" are not similarly situated to students who receive their education at school. C.W. responds that similarly situated individuals include all students who are entitled to a FAPE, regardless of where their education is provided, and thus the comparison is among disabled students who are entitled to a FAPE under the IDEA. It appears here, that the parties are actually in agreement as to the broad contours of a definition of "similarly situated students". As is clear from C.W.'s briefing, he does not contend that the reference to "other students" includes those that are not disabled. Instead, he seeks to compare those who are disabled and entitled to a FAPE regardless of whether they receive their education at school or at home. The limitation to disabled students is consistent with the reasoning found in *Ebonie S. v. Pueblo School District 60*, 819 F. Supp. 2d 1179 (D. Colo. 2011).

The District argues, however, that the definition of "similarly situated students" should be further limited to disabled students who, like C.W., are provided home-based education. Thus, contrary to C.W.'s contention, disabled students who received their education at schools would not be similarly situated. The cases cited by the District do not support its contention. *Ebonie*'s facts and issues are distinguishable and it does not stand for the proposition that "similarly situated students" are limited to a particular location. In *Ebonie,* the concern was the use of a wrap-around desk used for the plaintiff, but not for other students in her classroom. There was no dispute between the parties that "similarly situated students" was limited to those

5

in her classroom. Rather, because there were also non-disabled students in her classroom, the issue was whether they were similarly situated to Ebonie. As to that issue, the Court determined that "similarly situated students" was limited to disabled students; it never was presented with the question of whether disabled students in other classrooms might be similarly situated. The District also cites *A.B. ex rel. B.S. v. Adams-Arapahoe 28J School District*, 831 F. Supp. 2d 1226, 1254 (D. Colo. 2011). *A.B.* involved a comparison between the plaintiff student, who had a behavior plan, and other students with IEPs, who had no behavior plans. As a result, the court found the plaintiff was not similarly situated. This conclusion does not create an insurmountable precedent, as no behavior plans are at issue in this case.

The District has cited no authority for the proposition that comparators must be educated in the same location. Its argument that because every disabled student has an individually tailored IEP, only those with similar provisions can be similarly situated goes too far. Such argument could conceivably preclude treatment of disabled students with IEPs as similar. The issue here is whether disabled students with IEPs who are educated in the classroom are similarly situated to disabled students educated at home. To be sure, there are notable differences between instruction at home and instruction in the classroom, but at this stage in the litigation the burden that the Plaintiff bears is low. At this juncture, absent authority for the proposition advanced by the District, the Court cannot determine that as a matter of law, the group of "similarly situated students" cannot include disable students receiving services at a school.

The District's second argument is that even if disabled students receiving instruction at a school could be similarly situated to C.W., he has not stated sufficient facts to plausibly allege an equal protection claim. There is no doubt that open-ended allegations of discrimination without any factual specificity are insufficient to state a claim. *See, e.g.*, *Robbins v. Oklahoma*, 519

F.3d 1242 (10th Cir. 2008). And it is fair to say that the Amended Complaint is heavy on recitation of statutory provisions and short on factual allegations. But there are sufficient factual allegations found in Paragraphs 16, 17, and 18 of the Amended Complaint (**#16**) that describe the services that C.W. was entitled to and did not receive. These provisions are incorporated into the fourth claim for relief by reference, and although some refer to services received by non-disabled students, the Court understands the allegation to be circumscribed by C.W.'s admission that for purpose of equal protection arguments, he is limited to students with disabilities.

## VI. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss (**# 25**) is **DENIED**.

Dated this 14th day of August, 2018.

**BY THE COURT:**

*/s/ Marcia S. Krieger*
_____
Marcia S. Krieger
Chief United States District Judge